**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Rachel Bien
Dana Sussman
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Eric J. Gitig
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHELLE O. TRAWINSKI, On Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>KPMG LLP,<br><br>Defendant. | **11 Civ. 2978 (PAC)** |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF CLASS CERTIFICATION**
**AND COLLECTIVE ACTION NOTICE**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND.....................................................................................................2

I.    KPMG's Advisory Function Is Divided Between Support Personnel and Delivery Personnel.........................................................................................................................2

   A.    Plaintiff and the Proposed Class and Collective Were "Delivery" Personnel.. 2

   B.    Plaintiff and the Proposed Class and Collective Worked in KPMG's Transaction Services Service Line................................................................................. 2

II.   Plaintiff and the Proposed Class and Collective Were Staffed on Teams Tasked with Producing "Deliverables" for KPMG's Clients.............................................................3

   A.    KPMG's Service Contracts.............................................................................. 3

   B.    Associates Are Members of the Teams that Produce the "Deliverables" of a Client Engagement.......................................................................................... 4

   C.    KPMG Provides its Clients with and Outside Perspective ............................. 4

III.  Plaintiff and the Proposed Class and Collective Were Subject to the Same Policies that Dictated their Roles and Responsibilities on Engagement Teams.........................5

   A.    Transaction Services Associates Are Entry-Level Employees Who Are the Lowest Level Members of KPMG's Engagement Teams ............................... 5

   B.    Transaction Services Associates Are Evaluated According to the Same Performance Metrics....................................................................................... 6

   C.    Transaction Services Associates Have the Same Key Development Opportunities................................................................................................... 6

   D.    Transaction Services Associates Assist in the Production of Client Deliverables ..................................................................................................... 7

   E.    KPMG Recruits Associates to Work in Various Service Networks Within Transactions and Restructuring Using the Same Job Posting.......................... 7

IV.   KPMG Uniformly Classifies Associates as Exempt......................................................8

PROCEDURAL HISTORY.......................................................................................................8

ARGUMENT .............................................................................................................................9

I.    The FLSA and NYLL Protect Plaintiff and the Proposed Class ...................................9

II.   Plaintiff Meets All of the Rule 23 Requirements...........................................12

      A.  Plaintiff Meets Each Rule 23(a) Requirement ...................................... 14

          1.  Numerosity.................................................................. 14

          2.  Commonality................................................................ 14

              a.  Whether Associates Perform Production or Administrative Work Is a
                  Common Question ...........................................................14

              b.  Additional Common Questions Unite Plaintiff and the Class .............16

          3.  Typicality ................................................................. 17

          4.  Adequacy ................................................................... 18

      B.  Plaintiff Meets Rule 23(b)(3)................................................... 19

          1.  Common Questions Predominate ............................................... 19

          2.  A Class Action Is the Superior Mechanism.................................... 20

III.  The Court Should Appoint Plaintiff's Counsel as Class Counsel................................22

IV.   Plaintiff Exceeds Her Low Burden for Court-Authorized Notice ..............................23

CONCLUSION.................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aponte v. Comprehensive Health Mgmt., Inc.*,
No. 10 Civ. 4825, 2011 WL 2207586 (S.D.N.Y. June 2, 2011)..................................13, 18, 21

*Baffa v. Donaldson, Lufkin & Jenrett Sec. Corp.*,
222 F. 3d 52 (2d Cir. 2000)......................................................................................................18

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 2005)........................................................................................................14

*Cruz v. Hook-Superx, LLC*,
No. 09 Civ. 7717, 2010 WL 3069558 (S.D.N.Y. Aug. 5, 2010) ..............................................24

*Cuevas v. Citizens Fin. Grp., Inc.*,
No. 10 Civ. 5582, 2012 WL 1865564 (E.D.N.Y. May 22, 2012)..............................13, 15, 18

*Damassia v. Duane Reade, Inc.*,
250 F.R.D. 152 (S.D.N.Y. 2008) ................................................................................... passim

*Davis v. J.P. Morgan Chase & Co.*,
587 F.3d 529 (2d Cir. 2009)...........................................................................11, 14, 15, 20

*Dorn v. Eddington Sec., Inc.*,
No. 08 Civ. 10271, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011)...........................................22

*Dziennik v. Sealift, Inc.*,
No. 05 Civ. 4639, 2007 WL 1580080 (E.D.N.Y. May 29, 2007)...........................................18

*Han v. Sterling Nat'l Mortgage Co.*,
No. 09 Civ. 5589, 2011 WL 4344235 (E.D.N.Y. Sept. 14, 2011).........................13, 16, 18, 21

*In re Initial Pub. Offering Sec. Lit.*,
471 F.3d 24 (2d Cir. 2006)........................................................................................................12

*Marisol A. v. Guiliani*,
126 F.3d 372 (2d Cir. 1997).........................................................................................12, 14, 17

*Matheson v. The Glazier Group, Inc.*,
09 Civ. 4212, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011)............................................19, 23

*Moore v. PaineWebber, Inc.*,
306 F.3d 1247 (2d Cir. 2002)....................................................................................................20

*Myers v. Hertz Corp.*,
624 F.3d 537 (2d Cir. 2010)............................................................................................. passim

iv

*In re Novartis Wage & Hour Litig.*,
    611 F.3d 141 (2d Cir. 2010)..................................................................................10

*O'Dell v. AMF Bowling Ctrs., Inc.*,
    No. 09 Civ. 759, 2009 WL 6583142 (S.D.N.Y. Sept. 18, 2009).......................19, 23

*Pippins v. KPMG LLP*,
    No. 10 Civ. 0377, 2012 WL 19379 (S.D.N.Y. Jan. 3, 2012)..................................24

*Reiseck v. Universal Comm'cns of Miami, Inc.*,
    591 F.3d 101 (2d Cir. 2010)..................................................................................11

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)..................................................................................17

*Salomon v. Adderley Indus.*,
    No. 11 Civ. 6043, 2012 WL 716197 (S.D.N.Y. Mar. 6, 2012) .......................23, 24

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
    659 F.3d 234 (2d Cir. 2011)...........................................................................12, 18

*Shajan v. Barolo, Ltd.*,
    No. 10 Civ. 1385, 2010 WL 2218095 (S.D.N.Y. June 2, 2010)......................23, 24

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
    546 F.3d 196 (2d Cir. 2008)..................................................................................12

*Torres v. Gristede's Operating Corp.*,
    No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006)........................19, 20, 21, 22

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)....................................................................................14, 15

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) ............................................................................21

*Youngblood v. Family Dollar Stores, Inc.*,
    No. 09 Civ. 3176, 2011 WL 4597555 (S.D.N.Y. Oct. 4, 2011) ....................10, 13, 16, 18

**STATUTES**

29 U.S.C. § 207...........................................................................................................9

New York Labor Law §§ 650 *et seq.*............................................................................9

**REGULATIONS**

29 C.F.R. § 541.200(a)(2)...........................................................................................10

29 C.F.R. § 541.201 ...................................................................................................9, 11

29 C.F.R. § 541.202(a).................................................................................................16

29 C.F.R. § 778.114 .....................................................................................................17

N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 ....................................................9, 10

**FEDERAL RULES**

Fed. R. Civ. P. 23 ................................................................................................. passim

Fed R. Civ. P. 30(b)(6)........................................................................................8, 9, 22, 24

# PRELIMINARY STATEMENT

Plaintiff, Michelle Trawinski, seeks to certify a class and collective of KPMG Advisory Associates, as defined below, who work in entry-level positions, participate in the production of the product that KPMG sells to its clients, and are uniformly classified as exempt from the overtime requirements of the New York Labor Law ("NYLL") and the Fair Labor Standards Act ("FLSA").

Plaintiff's NYLL claim meets all of the requirements of Rule 23 of the Federal Rules of Civil Procedure because Plaintiff and the proposed class all raise the same legal and factual issue: whether their primary duty – assisting in the production of the "deliverables" that KPMG sells to its clients – the "output" of a client engagement – constitutes "production" work that falls outside of the NYLL's administrative exemption. *See Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 535 (2d Cir. 2009). The Second Circuit has endorsed the certification of misclassification claims where, as here, the evidence "tend[s] to show that the plaintiffs' job duties were similar in ways material to the establishment of the exemption criteria." *Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010), *cert. denied*, 132 S. Ct. 368 (2011) (citing *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156-61 (S.D.N.Y. 2008)).

Plaintiff also meets her low burden under the FLSA to show that she is similarly situated to the proposed collective. She and collective members were entry-level employees, served as the most junior members of the client "engagement teams" on which they were staffed, assisted in the day to day production of the product that KPMG sold to its clients, and were all classified as exempt from the FLSA's overtime requirements. *Myers*, 624 F.3d at 555 (a plaintiff moving under Section 216(b) may meet her burden "by making some showing that 'there are other employees . . . who are similarly situated with respect to their job requirements and with regard

to their pay provisions,' on which the criteria for many FLSA exemptions are based, who are

classified pursuant to a common policy or scheme") (quoting *Morgan v. Family Dollar Stores*,

551 F.3d 1233, 1259 (11th Cir. 2008)).

## FACTUAL BACKGROUND

**I.     KPMG's Advisory Function Is Divided Between Support Personnel and Delivery Personnel.**

KPMG is an audit, tax, and advisory firm with 87 offices and more than 23,000

employees and partners nationwide.  ECF No. 19 (Ans.) ¶ 2.  The firm is divided according to its

three main functions: Audit, Tax, and Advisory.  Declaration of Rachel Bien in Support of Class

Cert. and Collective Action Notice ("Bien Decl.") Ex. E[1] (Doughtie Tr.) 7:21-23.  Plaintiff and

the proposed class and collective members worked in KPMG's Advisory function.

**A.     Plaintiff and the Proposed Class and Collective Were "Delivery" Personnel.**

KPMG's Advisory function is divided between Client Service Delivery ("CSD") and

Client Service Support ("CSS").  *Id.* at 201:9-19, 220:11-16.  CSD personnel produce the

services that the KPMG Advisory function is in business to provide to its clients.  *Id.* at 200:17-

20, 221:17-22.  CSS personnel perform various back office functions, including marketing,

human resources, and information technology, that support CSD personnel in delivering services

to clients.  *Id.* at 148:11-14, 220:11-221:2.  Plaintiff and the class and collective that she seeks to

represent all worked in CSD.  *Id.* at 201:12-15, 220:17-19.

**B.     Plaintiff and the Proposed Class and Collective Worked in KPMG's Transaction Services Service Line.**

CSD is organized vertically.  At the top are three "service groups": Management

Consulting, Risk Consulting, and Transactions and Restructuring.  *Id.* at 10:25-11:5, 79:20-23.

---

[1]      Unless otherwise indicated, all exhibits are attached to the Bien Decl.

Each service group is divided into "service lines." *Id.* at 79:24-25. Each service line is divided into "service networks." *Id.* at 80:18-21, 102:6-9.

Plaintiff worked in the Transactions and Restructuring service group, which is divided into three service lines: Transaction Services, Corporate Finance, and Restructuring. *Id.* at 96:7-12, 107:24-108:9. Plaintiff worked in the Transaction Services service line, Ex. C (Trawinski Tr.) 23:25-24:3, which consists of five service networks: Financial Due Diligence, Lender Due Diligence, Accounting Advisory Services (formerly called Transaction Accounting Services),[2] Strategic Services (formerly called Business Due Diligence),[3] and Infrastructure. Ex. E (Doughtie Tr.) 108:10-25; Ex. O (Organizational Structure Spreadsheet). The class and the collective that Plaintiff seeks to represent consist of Associates who worked in the Transaction Services service line.[4]

## II. Plaintiff and the Proposed Class and Collective Were Staffed on Teams Tasked with Producing "Deliverables" for KPMG's Clients.

### A. KPMG's Service Contracts.

KPMG enters into service contracts with its clients that set forth the scope of the services that KPMG has agreed to perform, the client's fees, the parties' respective responsibilities, and other standard terms and conditions. Ex. E (Doughtie Tr.) 12:20-13:11, 14:22-15:7, 15:20-16:2, 19:20-20:4, 26:16-19, 27:23-28:4. According to the standard terms and conditions of these service contracts, KPMG will not make management decisions for the client, perform management functions for the client, or make decisions regarding the implementation of the

---

[2]  *See* Ex. E (Doughtie Tr.) 108:25-109:3
[3]  *See* Ex. E (Doughtie Tr.) 103:9-11.
[4]  Associates who worked in Transaction Services' Infrastructure service network are excluded from the proposed class and collective. *See infra* at 12, 23.

client's deliverable.  *Id.* at 17:16-184, 19:20-20:24, 22:8-16; Ex. G (Engagement Letter) at 0028779.

## B. Associates Are Members of the Teams that Produce the "Deliverables" of a Client Engagement.

KPMG refers to the output of an engagement as the "deliverable."  Ex. E (Doughtie Tr.) 13:12-14:3, 23:3-4, 23:9-12, 125:22-126:3, 127:12-14, 133:19-134:2.  The deliverable produced by Transaction Services engagement teams generally takes the form of a written report, usually a PowerPoint presentation with charts and tables.  Ex. A (Segretto Decl.) ¶ 9; Ex. B (Adams Decl.) ¶ 9; Ex. D (Wei Tr.) 318:14-16; Ex. E (Doughtie Tr.) 13:24-14:3, 24:22-25:3, 112:24-113:7, 133:19-134:8; Ex. Q (Transaction Services Report Template).

Once a service contract is signed, KPMG tasks an "engagement team," consisting of CSD personnel, with providing the contracted-for services to KPMG's clients.  Ex. E (Doughtie Tr.) 12:23-13:11; Ex. F (Advisory Fundamentals) at 0013508-10.  The engagement team is hierarchical and generally includes from most senior to most junior: a partner, a managing director, a senior manager/director, a manager, one or more Senior Associates, and one or more Associates.  Ex. E (Doughtie Tr.) 37:25-38:8; Ex. F (Advisory Fundamentals) at 0013508-10.

## C. KPMG Provides its Clients with an Outside Perspective.

Clients typically hire KPMG because of its skills, resources, expertise, and capabilities in certain areas.  Ex. E (Doughtie Tr.) 86:18-87:17, 87:24-8, 89:23-90:6, 91:16-92:4.  For example, in some cases, clients hire KPMG at the directive of their board of directors to provide an objective, external view of an issue.  *Id.* at 94:24-95:13, 96:21-97:18.  "Loaning staff" to clients to work under the direction of the clients' management is "not a major service offering that [KPMG] provide[s]."  *Id*. at 120:10-121:12.  It is also not a service that KPMG is "actively marketing" to clients.  *Id*. at 118:23-119:2.

4

**III. Plaintiff and the Proposed Class and Collective Were Subject to the Same Policies that Dictated their Roles and Responsibilities on Engagement Teams.**

      **A. Transaction Services Associates Are Entry-Level Employees Who Are the Lowest Level Members of KPMG's Engagement Teams.**

Associates are "entry-level" employees, many of whom KPMG hires right out of college. Ex. E (Doughtie Tr.) 46:22-24, 47:24-48:8, 144:24-145:4, 161:23-162:2. According to KPMG's "Transaction Services – Snapshot," a document that is "intended to provide . . . a broad overview of the [job] levels within a particular service line," *id*. at 152:19-21, the "typical" Transaction Services Associate has "0-2 years" of relevant work experience. Ex. L (Snapshot). The Snapshot also summarizes the Associate role as involving "taking direction from others in completing tasks and assignments" and "[a]ctively seeking out work from Senior Associate[s] or Manager[s]." *Id*.

Associates are the lowest-level members of engagement teams. Ex. A (Segretto Decl.) ¶¶ 3, 9; Ex. B (Adams Decl.) ¶¶ 3, 9; Ex. D (Wei Tr.) 98:23-99:3; 316:7-9; Ex. E (Doughtie Tr.) 144:19-145:4. In a training provided to new Associate hires, KPMG states that an Associate's role on an engagement team is to "[s]upport" the team with respect to "[d]ata gathering, analysis, and report consolidation," "[p]roject plan execution," "[w]orkpaper aggregation," and "[t]eamwork and collaboration." Ex. F (Advisory Fundamentals) at 0013510. This description is intended to give a general overview to new hires of the roles and responsibilities of Associates on engagement teams. Ex. E (Doughtie Tr.) 192:13-22. KPMG provides training on engagement teams to new hires because "they will be working as part of an engagement team in the performance of their work at KPMG." *Id.* at 164:10-20. KPMG believes that it is "important for any hire of KPMG to know the different levels and the different roles" of the members of its engagement teams. *Id*. at 164:21-165:6.

**B.      Transaction Services Associates Are Evaluated According to the Same Performance Metrics.**

KPMG has developed baseline performance goals that it expects all Associates to meet. *Id.* at 245:18-22; Ex. J (Baseline Goals); Ex. N (Role Description).  It has also developed general guidelines of the skills, training, and experiences that KPMG believes are important for all Associates, as well as the specific skills, training, and experiences that KPMG believes are important for Transaction Services Associates in particular.  *See* Ex. K (Skills, Assessment and Development – Transaction Services).  Utilization – reflecting the number of hours charged to clients – is also one of the factors on which KPMG evaluates Associates.  Ex. E (Doughtie Tr.) 249:21-250:9.  KPMG evaluates Associates based on their utilization because it is "an indication of their contribution in delivering client work[.]"  *Id*. at 250:12-15.

**C.      Transaction Services Associates Have the Same Key Development Opportunities.**

KPMG has identified the same "Key Development Opportunities" for Transaction Services Associates.  *See* Ex. L (Snapshot).  For example, all new Associates attend New Hire and Advisory Fundamentals trainings when they first begin their employment at KPMG.  Ex. E (Doughtie Tr.) 237:15-25.  Advisory Fundamentals provides a "broad overview training of working in the advisory practice."  *Id*. at 163:20-24.  It includes, among other topics, training on Excel basics, creating tables and graphs, using KPMG's proprietary software and templates, and business etiquette.  Ex. F (Advisory Fundamentals); Ex. H (Excel Basics); Ex. I (Excel Essentials); Ex. U (Transaction Services Reporting Tools).  Transaction Services Associates also attend Advisory University after they begin their employment in which they are provided with training specifically tailored to their Transaction Services duties.  Ex. E (Doughtie Tr.) at 238:12-239:3.

**D. Transaction Services Associates Assist in the Production of Client Deliverables.**

As the most junior members of engagement teams, Transaction Services Associates' primary duty is to support the engagement team to produce client deliverables. Ex. A (Segretto Decl.) ¶ 10; Ex. B (Adams Decl.) ¶ 10; Ex. D (Wei Tr.) 98:23-99:3, 318:11-319:3; Ex. F (Advisory Fundamentals) at 0013510. Their tasks generally include: using Excel and other software to generate financial statement analyses, such as charts and tables, to be included in the written deliverable; downloading and inputting data into spreadsheets; conducting secondary research; conducting primary research; and creating PowerPoint slides containing financial information and research results. Ex. A (Segretto Decl.) ¶¶ 10-11; Ex. B (Adams Decl.) ¶¶ 10-11; Ex. C (Trawinski Tr.) 47:9-12, 79:5-6, 79:15-20; Ex. D (Wei Tr.) 293:23-294:4, 294:12-14, 294:23-295:7, 318:17-23; Ex. P (New College Hire Training).

**E. KPMG Recruits Associates to Work in Various Service Networks Within Transactions and Restructuring Using the Same Job Posting.**

KPMG uses job postings to seek candidates for Transactions and Restructuring Associates that are general and do not specify any specific service network. *See, e.g.*, Ex. M (Job Posting). KPMG uses the same job postings for openings at different office locations. Ex. E (Doughtie Tr.) 255:17-24; Ex. M (Job Posting).

KPMG's job postings for Associates advertise that they "may have the opportunity to work in several areas in Transactions and Restructuring including Financial Due Diligence, Due Diligence for Lenders, Accounting Advisory Services, Strategic Services, Corporate Finance, Restructuring or Infrastructure, as needed." Ex. M (Job Posting). Because the qualifications of

Associates in Transactions and Restructuring hardly vary,[5] they may work on engagements in service networks other than the one into which they were hired from time to time. Ex. E (Doughtie Tr.) 225:22-228:15. In addition, it is not unusual for Associates from different service networks within Transactions and Restructuring to work on the same engagement. Ex. D (Wei Tr.) 91:18-20, 100:1-2, 226:5-18.

## IV.    KPMG Uniformly Classifies Associates as Exempt.

KPMG subjects all Associates to the same compensation policies and practices and admits that it classifies them as exempt from the overtime requirements of the FLSA and NYLL. Ans., Third Defense; Ex. A (Segretto Decl.) ¶ 18; Ex. B (Adams Decl.) ¶ 18; Ex. E (Doughtie Tr.) 203:17-18. Plaintiff and opt-ins regularly worked more than 40 hours a week without overtime compensation. ECF No.1 (Compl.) ¶ 49; Ex. A (Segretto Decl.) ¶ 18; Ex. B (Adams Decl.) ¶ 18.

## PROCEDURAL HISTORY

On May 3, 2011, Plaintiff Michelle Trawinski filed a Class Action Complaint alleging that KPMG's policy of classifying Advisory Associates as exempt and failing to pay them overtime violated the FLSA and NYLL. ECF No. 1. On July 28, 2011, the Court entered a Case Management Plan that bifurcated discovery into two stages. ECF No. 15. The first stage of discovery, which has now ended, focused on discovery related to the class and collective allegations of the complaint. *Id.* Merits discovery is reserved for the second stage. *Id.*

---

[5]     KPMG's Rule 30(b)(6) witness testified that the job qualifications of Associates in the Infrastructure service network, which is excluded from the proposed class and collective definitions, may be different. Ex. E (Doughtie Tr.) 226:8-23. Plaintiff has not sought to include Associates who worked in the Infrastructure service network in the proposed class and collective.

In order to expedite the first stage of discovery and to proceed promptly with the filing of Plaintiff's motion for class and collective certification, the parties agreed to limit KPMG's production during the first stage of discovery to "non-custodial" electronic and hard copy discovery, excluding emails and other relevant electronic documents contained in the electronic files of individual custodians. *See* ECF No. 35.

During the first stage of discovery, KPMG deposed Plaintiff and one opt-in, Lisa Wei. Plaintiff deposed one Rule 30(b)(6) witness, Lynne Doughtie, Vice-Chair of Advisory, on KPMG's Associate job descriptions, its corporate structure, and its Advisory function. Bien Decl. ¶ 9.

In addition to Plaintiff, four individuals have joined the case as opt-ins pursuant to Section 216(b) of the FLSA. *See* ECF Nos. 14, 42-44. Opt-in Lisa Wei worked as an Associate in Transaction Services in New York from approximately June 2008 through July 2010. Ex. D (Wei Tr.) 21:16-17. Opt-in Michael Segretto worked as an Associate in Transaction Services in Chicago, Illinois from approximately October 2009 through approximately June 2011. Ex. A (Segretto Decl.) ¶¶ 1-2. Opt-in Frank Adams worked as an Associate in Transaction Services in Chicago, Illinois from approximately August 2007 through approximately 2009. Ex. B (Adams Decl.) ¶¶ 1-2. Opt-in Christopher Sindoni worked as an Associate in Transaction Services in New York from approximately October 2009 to approximately to June 2010. Bien Decl. ¶ 6.

## **ARGUMENT**

### I.     **The FLSA and NYLL Protect Plaintiff and the Proposed Class.**

The FLSA and the NYLL require employers to pay employees a premium rate of one and one-half times their regular rate of pay for hours worked in excess of 40 in a workweek, unless the employees are exempt. 29 U.S.C. § 207; NYLL §§ 650 *et seq*.; N.Y. Comp. Codes R. &

Regs. tit. 12, § 142-2.2. Exemptions to the FLSA and NYLL are narrowly construed in favor of the employees in question. *In re Novartis Wage & Hour Litig.*, 611 F.3d 141, 150 (2d Cir. 2010). The NYLL's overtime requirements and its exemptions are interpreted using the same standards as the FLSA. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (adopting FLSA exemptions into state law); *Novartis*, 300 F.3d at 157.

Plaintiff's overtime claims are well suited for class and collective certification. All of the members of the proposed class and collective were classified as exempt from overtime, had the same title, worked in the same service line, performed "entry-level" work supporting the output of the engagement teams to which they were assigned, served as the lowest-level members of engagement teams, were evaluated based on the same performance criteria, and typically had little or no previous work experience. *See* Factual Background Part III. *supra. See Youngblood v. Family Dollar Stores, Inc.*, No. 09 Civ. 3176, 2011 WL 4597555, at *2 (S.D.N.Y. Oct. 4, 2011) (certifying a class of store managers based on the defendant's uniform classification policy and "corporate policies delineating store managers' . . . 'uniform' day-to-day job responsibilities"); *Damassia*, 250 F.R.D. at 159-60 (certifying class where defendant uniformly classified job category as exempt and where the "duties of the job [we]re largely defined by . . . corporate procedures and policies"); *see also Myers*, 624 F.3d at 549 (NYLL overtime claim may be certified based on a blanket classification decision and evidence of "a uniform corporate policy detailing employees' job duties") (citing *Damassia*, 250 F.R.D. at 159-60).

These common features of the Associate position will generate the same answer to whether KPMG can meet the first element of its administrative exemption affirmative defense: whether Associates' primary duty is "directly related to the management or general business operations of [KPMG] or [KPMG's] customers." 29 C.F.R. § 541.200(a)(2). To satisfy that

element, KPMG must prove that Associates' primary duty is "administrative," not "production" work. *See Davis*, 587 F.3d at 531-32.

Employees perform "administrative" work when their work is directly related to "assisting with the running or servicing of the business." 29 C.F.R. § 541.201(a). Administrative work is the type that "must be performed no matter what the business produces," including "functions such as management of employees through a human resources department or supervising a business's internal financial activities through the accounting department." *Davis*, 587 F.3d at 535; *see also* 29 C.F.R. § 541.201(b) (administrative work includes work in "functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities").

Employees perform "production" work when they are engaged in producing or generating "the good or service that is the primary output of [the] business[.]" *Davis*, 587 F.3d at 535. In other words, if an employee's primary duty "concerns the 'production' of . . . the fundamental service provided by the [defendant]," the employee is not an administrative employee. *Id.* at 534. *See also Reiseck v. Universal Comm'cns of Miami, Inc.*, 591 F.3d 101, 106 (2d Cir. 2010) (holding that advertising salespersons were production workers because "advertising space [wa]s [the defendant]'s 'product'" and the "primary duty [of advertising salespersons] was the sale of that product").

**II.     Plaintiff Meets All of the Rule 23 Requirements.**

Plaintiff seeks to certify the following class under Rule 23 for violations of Article 19 of

the NYLL:

> All current and former Associates who worked in Transaction Services in New
> York, at any time between May 3, 2005 and the date of final judgment in this
> matter, excluding Associates who worked in the Infrastructure service network.

Courts in this Circuit give Rule 23 a "liberal rather than restrictive construction," and

"adopt a standard of flexibility" when they apply it. *Marisol A. v. Guiliani*, 126 F.3d 372, 377

(2d Cir. 1997) (internal quotation marks omitted).  In order to certify a class, the Court "must

receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule

23 requirement has been met." *In re Initial Pub. Offering Sec. Lit.*, 471 F.3d 24, 41 (2d Cir.

2006).  The Court must "resolve[] factual disputes relevant to each Rule 23 requirement and

find[] . . . whatever underlying facts are relevant to a particular Rule 23 requirement have been

established[.]" *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 251 (2d Cir.

2011).  "[I]n making such determinations, [the Court] should not assess any aspect of the merits

unrelated to a Rule 23 requirement;" however, where a Rule 23 requirement and a merits issue

overlap, the Court must resolve those disputes that are necessary to determining whether Rule 23

has been met. *Id.*  Plaintiff must establish the Rule 23 requirements by a preponderance of the

evidence. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196,

203 (2d Cir. 2008).

The Second Circuit addressed the certification of NYLL misclassification claims in *Hertz

v. Myers, Inc.*, and held that class treatment of such claims can be appropriate and efficient. *Id.*

at 549.  In doing so, it specifically endorsed the certification of a class where there is evidence of

a uniform exemption decision and evidence that "tend[s] to show that the plaintiffs' job duties

were similar in ways material to the establishment of the exemption criteria." *Id.* District courts in the Second Circuit have routinely certified misclassification claims based on such evidence. *See Cuevas v. Citizens Fin. Grp., Inc.*, No. 10 Civ. 5582, 2012 WL 1865564, at *3 (E.D.N.Y. May 22, 2012) (certifying class of assistant bank managers based on evidence of a uniform job description, training materials, and performance evaluations, which were "unquestionably probative" of the plaintiffs' "actual duties") (internal quotation marks omitted); *Youngblood*, 2011 WL 4597555, at *2 (certifying class of store managers based on evidence of uniform classification policy and standardized corporate policies dictating plaintiffs' day-to-day responsibilities); *Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 Civ. 4825, 2011 WL 2207586, at *9-12 (S.D.N.Y. June 2, 2011) (certifying class based on uniform classification policy and uniform job descriptions and testimony of plaintiffs regarding their job duties); *Han v. Sterling Nat'l Mortgage Co.*, No. 09 Civ. 5589, 2011 WL 4344235, at *4 (E.D.N.Y. Sept. 14, 2011) (certifying class based on employer's uniform classification and common job description); *Damassia*, 250 F.R.D. at 159-64 (certifying class based on uniform classification policy and evidence of "centrally derived" business practices that governed the duties and responsibilities of class members) (internal quotation marks omitted).

In order to meet her burden, Plaintiff must show that all of the requirements of Rule 23(a) are met and that one of the requirements of Rule 23(b) is met. Fed. R. Civ. P. 23. To satisfy Rule 23(a), Plaintiff must show that:

(1) The class is so numerous that joinder of all members is impracticable;
(2) There are questions of law or fact common to the class;
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4). Rule 23(b)(3), the provision that Plaintiff moves under here, is satisfied where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## A. Plaintiff Meets Each Rule 23(a) Requirement.

### 1. <u>Numerosity</u>

Rule 23(a)(1) requires Plaintiff to show that "the class is so numerous that joinder of all members if impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 2005). There are more than 100 members of the proposed Class. Bien Decl. ¶ 10.

### 2. <u>Commonality</u>

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A single common question of law or fact will suffice. *Marisol A.*, 126 F.3d at 376; *accord Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). The commonality requirement is met where a common question of fact or law is capable of "generat[ing] common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 131 S. Ct. at 2551 (emphasis in original) (internal quotation marks omitted).

#### a. <u>Whether Associates Perform Production or Administrative Work Is a Common Question.</u>

Whether Associates' work is "production" work or "administrative" work for purposes of the administrative exemption is a common question that will generate a common answer for Plaintiff and the Class. *See Davis*, 587 F.3d at 531-32 ("Employment may . . . be classified as belonging in the administrative category, which falls squarely within the administrative

exception, or as production/sales work, which does not"); *see Wal-Mart*, 131 S. Ct. at 2551

("What matters to class certification . . . [is] the capacity of a classwide proceeding to generate

common *answers* apt to drive the resolution of the litigation.") (emphasis in original) (internal

quotation marks omitted). This question is a particularly appropriate one for classwide

resolution because the answer to it does not vary from one Associate to another, and answering it

"will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551.

The proof that will answer this question is also the same for Plaintiff and all Class

Members. It includes, but is not limited to, proof that: (1) Plaintiff and the Class worked as CSD

personnel producing the Advisory services that KPMG sold to its clients, while other personnel,

in CSS, performed the back office functions that supported CSD personnel in delivering

Advisory services to clients, Ex. E (Doughtie Tr.) 148:11-14, 200:17-20, 221:17-22; (2) Plaintiff

and the Class served on engagement teams supporting the production of client deliverables, Ex.

A (Segretto Decl.) ¶ 10; Ex. B (Adams Decl.) ¶ 10; Ex. D (Wei Tr.) 98:23-99:3, 318:11-319:3;

Ex. F (Advisory Fundamentals) at 0013508-10; and (3) KPMG does not make management

decisions for the client, perform management functions for the client, or make decisions

regarding the implementation of the KPMG's "deliverable," Ex. E (Doughtie Tr.) 17:16-18:4,

19:20-20:24, 22:8-16; Ex. G (Engagement Letter) at 0028779.

This common proof, which does not vary from class member to class member, is relevant

to whether Associates' work falls on the administrative or production side of the

administrative/production dichotomy, *see Davis*, 587 F.3d at 532-35, and supports certification.

*See Cuevas*, 2012 WL 1865564, at *3 ("interpreting whether the duties described in" uniform job

descriptions and other company policies "are consistent with either the 'executive' or

'administrative' exceptions is a relevant question common to all class members") (internal

quotation marks omitted); *Youngblood*, 2011 WL 4597555, at *2 (common questions including

"whether [plaintiffs] are exempt from NYLL overtime requirements because they perform either

executive or administrative duties" satisfies Rule 23(a)(2)) (internal quotation marks omitted);

*Han*, 2011 WL 4344235, at *4 ("whether an exemption applies to the NYLL's wage

requirements is a legal issue that is common to the entire class"); *Damassia*, 250 F.R.D. at 157

(common questions include "whether or not [plaintiffs'] duties fall into the 'executive' or

'administrative' exceptions"); *see also Myers*, 624 F.3d at 549 ("evidence tending to show that

the plaintiffs' jobs were similar in ways material to the establishment of the exemption criteria"

may satisfy Rule 23's higher predominance standard).

       b.       Additional Common Questions Unite Plaintiff and the Class.

       Plaintiff's claims raise additional common questions that will be answered with common

proof.  These questions include, but are not limited to:

- What constitute "matters of significance" with respect to the output of Transaction

  Services engagement teams, *see* 29 C.F.R. § 541.202(a) ("The term 'matters of

  significance' refers to the level of importance or consequence of the work performed.");

- Whether KPMG had a good faith basis for classifying Plaintiff and the Class as exempt,

  *see Damassia*, 250 F.R.D. at 157 (common issues included applicability of the "good

  faith" defense);

- Whether KPMG required Plaintiff and the Class to accurately record all of the hours they

  worked, *see* Ex. A (Segretto Decl.) ¶¶ 19-20; Ex. B (Adams Decl.) ¶¶ 19-20; Ex. C

  (Trawinski Tr.) 69:5-15, 96:8-14; Ex. D (Wei Tr.) 275:11-21; and

- Whether the fluctuating workweek method of calculating overtime applies to Plaintiff and the members of the Class, *see* 29 C.F.R. § 778.114.

### 3. <u>Typicality</u>

Rule 23(a)(3) is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotation marks omitted). "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). The claims of the named plaintiff and the class "only need to share the same essential characteristics, and need not be identical." *Damassia*, 250 F.R.D. at 158 (internal citation omitted). The typicality requirement is not "highly demanding." *Id.*

Here, Plaintiff is typical of the class she seeks to represent. She worked in the same title and in the same service line as the proposed Class, was categorized as CSD, performed the same primary function of supporting engagement teams to produce client deliverables, was subject to the same policies that applied to all Transaction Services Associates, and was classified as exempt. Ex. C (Trawinski Tr.) 23:25-24:5, 69:8-15; Ex. E (Doughtie Tr.) 203:17-18, 245:18-22; Ex. F (Advisory Fundamentals) at 0013508-10; Ex. J (Baseline Goals); Ex. L (Snapshot); Ex. N (Role Description).

Plaintiff's claim is based on the same legal theory as the members of the Class – that KPMG misclassified her and the members of the Class as "administrative" employees and that she and the Class are owed overtime compensation under the NYLL. *See Damassia*, 250 F.R.D. at 158 ("all class members' claims, including those of named plaintiffs, are based on the same course of events and legal theory, namely that [defendant]'s decision to classify its assistant

managers as 'exempt' is inconsistent with the requirements of the NYLL"); *see also Cuevas*, 2012 WL 1865564, at \*5 (typicality met where the plaintiff's "misclassification claims share[d] the same essential elements and legal arguments as those of the other putative class members"); *Youngblood*, 2011 WL 4597555, at \*4 (typicality met because "the essential issue is whether [plaintiffs'] executive or administrative responsibilities, if any, were extensive enough to be considered their primary duty and this disputed issue occupies essentially the same degree of centrality for [plaintiffs] as for the rest of the class") (internal quotation marks omitted); *Han*, 2011 WL 4344235, at \*6; *Aponte*, 2011 WL 2207586, at \*10.

### 4. <u>Adequacy</u>

Rule 23(a)(4) tests whether the class representative will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Where the "class representative[] [is] prepared to prosecute fully the action and ha[s] no known conflicts with any class member," the adequacy requirements are met." *Shahriar*, 659 F.3d at 253. "'[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'" *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4639, 2007 WL 1580080, at \*6 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998)). "The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class." *Damassia*, 250 F.R.D. at 158. Plaintiff does not have interests that are antagonistic to the class. Moreover, in furtherance of her duties as class representative, she sat for a full-day deposition and produced discovery in response to KPMG's document requests. Bien Decl. ¶ 9.

Plaintiff also selected counsel who are "qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrett Sec. Corp.*, 222 F. 3d 52, 60 (2d Cir. 2000).

Outten & Golden LLP ("O&G") and Fitapelli & Schaffer, LLP ("F&S") have substantial experience prosecuting wage and hour class and collective actions and have very good reputations in the field of employment law. *See, e.g., Damassia*, 250 F.R.D. at 158 (finding O&G to be adequate class counsel based on its "established record of competent and successful prosecution of large wage and hour class actions"); *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at *15 (S.D.N.Y. Sept. 29, 2006) (approving O&G as class counsel in wage and hour class action because they are "qualified, experienced, and generally able to conduct the litigation") (internal quotation marks omitted); *Matheson v. The Glazier Group, Inc.*, 09 Civ. 4212, 2011 WL 6268216, at *7 (S.D.N.Y. Dec. 13, 2011) ("Outten & Golden LLP and Fitapelli & Schaffer, LLP have substantial experience prosecuting large-scale wage and hour class and collective actions"); *O'Dell v. AMF Bowling Ctrs., Inc.*, No. 09 Civ. 759, 2009 WL 6583142, at *2 (S.D.N.Y. Sept. 18, 2009) (appointing O&G and F&S as class counsel and finding them to be "experienced and well-qualified employment lawyers and class action lawyers" with "particular expertise in prosecuting and settling wage and hour class actions").

**B.      Plaintiff Meets Rule 23(b)(3).**

**1.      <u>Common Questions Predominate.</u>**

Rule 23(b)(3) requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members . . . ." Fed. R. Civ. P. 23(b)(3). A common question predominates when "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues

subject to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

As discussed above, significant generalized proof "tend[s] to show that [Associates'] job duties were similar in ways material to the establishment of the exemption criteria." *Myers*, 624 F.3d at 549. In particular, whether Associates' primary duty was the performance of administrative work – a required element for KPMG's administrative exemption defense – will be resolved based on generalized proof as discussed above, *see* Part II.A.2.a. *supra*, and will not vary from Associate to Associate. *See Davis*, 587 F.3d at 531-32 ("Employment may . . . be classified as belonging in the administrative category, which falls squarely within the administrative exception, or as production/sales work, which does not"); *Myers*, 624 F.3d at 549 (predominance may be met with "evidence tending to show that the plaintiffs' jobs were similar in ways material to the establishment of the exemption criteria"). This issue is substantial and predominates over any individual issues because if KPMG cannot satisfy this element of the administrative exemption, the defense must fail. *See Davis*, 587 F.3d at 537 (employer's failure to satisfy just one element of the administrative exemption rendered the entire exemption inapplicable); *Torres*, 2006 WL 2819730, at *14-16 (common issue of whether plaintiffs were paid on a salary basis was "outcome determinative" and thus predominated over any differences in the plaintiffs' duties).

### 2. A Class Action Is the Superior Mechanism.

Rule 23(b)(3) requires the Court to determine "that a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In determining whether superiority is met, the Court may consider the following non-exclusive list of relevant factors:

(A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

Plaintiff satisfies each of the four factors. First, class members' interests would not be served by individually controlling the prosecution of the action because most lack the resources to even "contemplate proceeding with this litigation in any context other than through their participation in a class action, given the expense and burden that such litigation would entail." *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 304 (S.D.N.Y. 2003). "[A] class action will save an enormous amount in litigation costs for all parties and allow them to more efficiently prosecute their claims and defenses." *Han*, 2011 WL 4344235, at *11; *Aponte*, 2011 WL 2207586, at *11 ("Litigating each claim individually would likely result in wasteful and repetitive lawsuits, thus ineffectively utilizing the resources of the judiciary and the parties.")

Second, there is currently no other litigation of which Plaintiff is aware raising the issues that Plaintiff raises here.

Third, concentrating the litigation in this forum is desirable because KPMG's headquarters are here and the members of the proposed Class worked out of its offices in New York City. Bien Decl. ¶ 11.

Fourth, this case is unlikely to present manageability problems because the proposed Class is relatively small and they worked out of KPMG's offices in New York City. *See Torres*, 2006 WL 2819730, at *16 (finding "little reason to expect" manageability problems for class action of 300 New York City grocery workers).

**III.    The Court Should Appoint Plaintiff's Counsel as Class Counsel.**

The Court should appoint O&G and F&S ("Plaintiff's Counsel") as Class Counsel because they satisfy the requirements of Rule 23(g).  Rule 23(g) requires the Court to consider:

> (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, (3) counsel's knowledge of the applicable law, (4) the resources counsel will commit to representing the class; and (5) any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.

Fed. R. Civ. P. 23(g)(1)(A).

Plaintiff's Counsel have done significant work investigating and prosecuting the claims. They responded to document requests and propounded their own requests; prepared Plaintiff and opt-in Wei for depositions and defended their depositions; interviewed potential class and collective members; drafted and collected declarations from potential class and collective members; deposed KPMG's 30(b)(6) witness; and negotiated an ESI protocol, confidentiality agreement, and other discovery-related agreements with KPMG.   Bien Decl. ¶ 18.  Plaintiff's Counsel have already committed significant resources to representing the interests of the proposed Class and are committed to continuing to do so.   *Id*.

Courts have consistently recognized Plaintiff's Counsel's "extensive experience prosecuting and settling nationwide wage and hour class and collective actions" and found them to be "well-versed in wage and hour and class action law."  *Dorn v. Eddington Sec., Inc*., No. 08 Civ. 10271, 2011 WL 382200, at *3 (S.D.N.Y. Jan. 21, 2011); *see also Damassia*, 250 F.R.D. at 158 (finding O&G to be adequate class counsel based on its "established record of competent and successful prosecution of large wage and hour class actions"); *Torres*, 2006 WL 2819730, at *15 (approving O&G as class counsel in wage and hour class action because they are "qualified, experienced, and generally able to conduct the litigation") (internal quotation marks omitted);

*Matheson*, 2011 WL 6402303, at *3 (appointing O&G and F&S as class counsel based on their "substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage and hour law and in class action law"); *O'Dell*, 2009 WL 6583142, at *2 (appointing O&G and F&S as class counsel and finding them to be "experienced and well-qualified employment lawyers and class action lawyers" with "particular expertise in prosecuting and settling wage and hour class actions") (internal quotation marks omitted).

**IV.     Plaintiff Exceeds Her Low Burden for Court-Authorized Notice.**

Plaintiff respectfully requests that the Court authorized notice to the following Collective:

All current and former Associates who worked in Transaction Services, at any time between May 3, 2008 and the date on which notice is sent, excluding Associates who worked in the Infrastructure service network.

Courts in the Second Circuit employ a two-step approach when faced with a motion for conditional certification. *Myers*, 624 F.3d at 554-55. At the initial notice stage, a plaintiff must establish that other employees "may be similarly situated" to her. *Id*. at 554 (internal quotation marks omitted). "Nothing more is needed at this stage of the litigation." *Shajan v. Barolo, Ltd.,* No. 10 Civ. 1385, 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010). In an FLSA exemption case, a plaintiff can meet their burden "by making some showing that 'there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions,' on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." *Myers,* 624 F.3d at 555 (quoting *Morgan*, 551 F.3d at 1259).

At this initial stage, Plaintiff's burden is "minimal" and she need only make a "modest factual showing" that she and others are similarly situated. *Salomon v. Adderley Indus.*, No. 11

Civ. 6043, 2012 WL 716197, at *1 (S.D.N.Y. Mar. 6, 2012) (quoting *Myers*, 624 F.3d at 555).

This is because "the purpose of the first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (emphasis in original). Accordingly, at this stage, "[w]eighing of the merits is absolutely inappropriate." *Shajan*, 2010 WL 2218095, at *1. Courts "regularly rely on plaintiffs' affidavits and hearsay statements in determining the propriety of sending [collective certification] notice." *Salomon*, 2012 WL 716197, at *1. At the second stage, based upon a fuller record, the Court may determine that the plaintiffs who opted in are in fact not similarly situated and can de-certify the collective. *Myers*, 624 F.3d at 555.

Here, Plaintiff submits ample evidence that "there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions[.]" *Myers,* 624 F.3d at 555 (internal quotation marks omitted). Plaintiff submits declarations and testimony from three Associates who worked in New York and Illinois, her own deposition testimony, deposition testimony from KPMG's 30(b)(6) witness, and documents produced by KPMG, including job descriptions, training materials, and other documents that discuss KPMG's uniform treatment of Transaction Services Associates. This evidence demonstrates that Plaintiff and the proposed Collective held the same title, were subject to the same job descriptions and compensation policies, were uniformly classified as exempt, performed "entry-level" work as the lowest-level members of KPMG engagement teams, and supported engagement teams to produce client deliverables. *See* Factual Background Part III. *supra.* The evidence is also more than sufficient to meet Plaintiff's low burden. *See Pippins v. KPMG LLP*, No. 10 Civ. 0377, 2012 WL 19379, at *8-9 (S.D.N.Y. Jan. 3, 2012) (certifying collective of KPMG Audit Associates based on evidence that all held the same title, performed the same function, underwent the same training, and were subject to the same job description);

*Cruz v. Hook-Superx, LLC*, No. 09 Civ. 7717, 2010 WL 3069558, at *2 (S.D.N.Y. Aug. 5, 2010) (granting conditional certification based on plaintiffs' declarations that demonstrated, among other things, that their job duties did not vary from store to store).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) certify the proposed Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3); (2) appoint Plaintiff's Counsel as Class Counsel; (3) conditionally certify the proposed Collective pursuant to 29 U.S.C. § 216(b) and authorize notice to be issued; (4) order the parties to meet and confer regarding the contents of a proposed class and collective notice; and (5) order KPMG to produce a computer-readable data file containing the names, last known mailing addresses, last known telephone numbers, last known email addresses, work locations, and dates of employment for all Class and Collective members.

Dated:      May 31, 2012
            New York, New York

                              Respectfully submitted,

                              **OUTTEN & GOLDEN LLP**
                              By:

                              /s/ Rachel Bien
                              Rachel Bien

                              Justin M. Swartz
                              Rachel Bien
                              Dana Sussman
                              3 Park Avenue, 29th Floor
                              New York, New York 10016
                              Telephone:  212-245-1000
                              Facsimile: (212) 977-4005

                              **FITAPELLI & SCHAFFER, LLP**
                              Joseph A. Fitapelli
                              Brian S. Schaffer
                              Eric J. Gitig

475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

***Attorneys for Plaintiff***